## WILSON *against* FOWLER.

### ERROR *to Pulaski Circuit Court.*

Where the defendant in a civil suit moved for a change of venue, under the act of November 30, 1840, and his motion was overruled, if he did not except to the opinion of the Court, but afterwards appeared upon a writ of inquiry, and introduced evidence in mitigation of damages, and subsequently moved for a new trial, and excepted to the opinion of the Court refusing it, he waived thereby his objection to the overruling his motion for a change of venue.

It is a general rule, to which there are few objections, that he who abandons one point or position, and selects another, must rest his cause upon the latter; and if that be adjudged against him, he will not be allowed to return to the first point, which he has voluntarily relinquished.

The effort in this case to mitigate the damages, the motion for a new trial, and the bill of exceptions, were equivalent to an appearance and a plea.

In a suit by an attorney for his fee, where, of three witnesses, two state that the charge was not unreasonable, and the third does not state positively that it was unreasonable, though he strongly insinuates such an opinion, it was the province of the jury to compare and weigh the testimony; and if they give a verdict for the whole amount, their finding is according to the preponderance of the proof, and will not be disturbed.

This was an action of assumpsit, instituted in the Pulaski Circuit Court, by Absalom Fowler, as an attorney at law, for $1000, his fee for defending Wilson, who was indicted for the murder of Joseph J. Anthony, a member of the House of Representatives of this State, in the Hall, whilst the House was in session; the said John Wilson being at the time Speaker of the House.

On the tenth of March, which was the tenth day of the return term, a judgment *by default* was rendered against Wilson, and a writ of inquiry awarded to the same term. On the twelfth day, on his affidavit, the judgment was set aside, without costs, or terms to plead.

On the next day, Wilson filed a paper, purporting to be a notice that he would, "on Friday morning next," of that term, during the sitting of Court, make application to remove the suit, under the statute in such case made and provided, to Pike county.

On the 19th day of March, Wilson moved the Court, on affidavit, to remove the case to Pike county, where he resided; which motion, on the 22d, was overruled. Afterwards, March 31st, a second judgment by default was rendered against Wilson, and a jury assessed the

Wilson *against* Fowler.

damages, in favor of Fowler, at one thousand dollars; upon which finding, a judgment was rendered.

On the first day of April, 1840, the defendant, by attorney, moved the Court to set aside the verdict on the writ of inquiry, on the ground of excessive damages, and that the verdict was contrary to evidence; which motion was overruled. The defendant thereupon filed a bill of exceptions, on which all the evidence given on the inquiry of damages, was incorporated.

The bill of exceptions sets out, that ALBERT PIKE testified that the plaintiff below was one of Wilson's counsel, in his defence for the murder of said Anthony, in the House of Representatives; and, *with* other counsel, defended Wilson at the trial in Saline Circuit Court, and also on an application for a change of venue: *that fees of attorneys*, in criminal cases, vary, according to the magnitude of the cause and the ability to pay: that the case in question was one of the *first magnitude:* that *seven hundred or one thousand dollars would be a reasonable fee*, in a case of the magnitude of Wilson's, *and for the services rendered by Fowler in that case:* that witness knew of no established rule regulating fees in criminal cases; but that they depended on circumstances: that witness was one of the counsel for the Notrebes, and received $1000 for his services: that the three Notrebes were indicted together, but only one of them was tried: that where there are a number of counsel associated in the same case, it is his rule *to make the same charge as if he had the sole management;* but in several cases heretofore, he has taken a smaller fee, on account of several attorneys being employed: that generally *$500 is a good fee*, and he has not charged $1000, except in the said case of Notrebe. Notrebe was better able to pay than Wilson: that he is not intimately acquainted with Wilson's circumstances, but believes he has several negroes, and was, at the time of the murder of Anthony, connected with the Real Estate Bank: that it was the impression of witness, that John W. Cocke was disposed to charge more than five hundred dollars, and that he knows that his fee was a matter of compromise and reference to three lawyers: that Wilson's case was one of *greater difficulty than Notrebe's:* and that not long after Wilson's trial, Fowler sent a note by witness, requiring a fee of $1000 from Wilson.

Wilson *against* Fowler.

FREDERICK W. TRAPNALL testified, that the criterion of charges for defending criminal cases, " is to be found in the magnitude of the offence, and the breach of the party charged with its commission:" that " the *offence with which Wilson was charged was of a very heinous character, and the case an aggravated one:*" that the charge of a fee is also in some measure regulated by the number of attorneys engaged, according to the practice of witness: that he *would not think* " *one thousand dollars an unreasonable fee* in the case of the State against Wilson." That he was employed to defend the Notrebes, all three of whom were indicted together, at the Post of Arkansas, and received one thousand dollars; and that a *nolle prosequi* was entered as to all but one of them: that Mr. Pike also received $1000 for his services in defence of the same case: that the older Notrebe is a wealthy man: that witness, Pike, and Freeman were engaged in Notrebe's defence: that Trapnall & Cocke were to receive $500 of Wilson, for John W. Cocke's services in his case: witness is not certain that Fowler attended to Wilson's case throughout the sitting of the *examining Court:* " that one thousand dollars is an unusual fee, but that the case of Wilson was a *most unusual and extraordinary case:* that Notrebe's case was one of much less difficulty: that the fees of witness and Pike, in Notrebe's case, were adjusted after the trial.

CHESTER ASHLEY, on the part of the defendant, testified, that he was retained by Wilson in the case referred to: that he was aiding as counsel at the Court of Inquiry, which lasted three or four days: that Fowler had been retained by G. D. Royston, at Wilson's instance: that witness, Childress, Cocke, and Fowler, defended Wilson, after the cause was removed to Saline county, &c. &c. That Childress received $300, on account of prompt payment being made to him: that witness charged Wilson $500, and received his obligation therefor; and that he considers that sum an ample fee for his services: that Cocke was to receive the like sum of $500: that it was a case of the *first magnitude;* and had witness been sole counsel, he should have charged *a thousand dollars,* and *perhaps more.* That $500 is the lowest fee he would charge in a criminal case, where the party was able to pay. That in cases where there is associate counsel, it has never been his practice to charge as much as he otherwise would,

the labor and responsibility being less; and that there is a difference in the amount of the fee, where there are several and where only one attorney is employed. Witness appeared for Wilson in his professional character, although his relations with Wilson were of the most friendly kind; and that witness had understood that the relations between Fowler and Wilson were not of the most friendly character; that witness had understood something to the effect that Fowler was employed by Wilson, to prevent his retainer on the part of the prosecution; and that the services of said Fowler were considered important and essential.

HEMPSTEAD and JOHNSON, for the plaintiff:

There are two errors assigned, upon which the plaintiff relies to reverse the judgment rendered in the Circuit Court. First: The cause ought to have been removed to the county where the plaintiff in error resided. He brought himself within the provisions of the Act of the General Assembly, approved November 30th, 1840; and the only question is, whether the Act conflicts with the State Constitution. By that instrument, the State is to be divided into convenient circuits, each to consist of not less than five nor more than seven counties; and each Circuit Court, *inter alia*, to have original jurisdiction in all matters of contract, where the sum in controversy is over one hundred dollars, with a general power to issue all necessary writs, to carry into effect their general and specific powers. The Legislature could not, directly or indirectly, deprive the Circuit Court of any of its constitutional jurisdiction, or constitute any other criterion of jurisdiction, than that established by the Constitution, which, in matters of contract, is a sum over one hundred dollars. This principle is plain and incontrovertible; but it is confidently asserted, that it can have no application to the Act of the General Assembly which has been referred to. The case of *Noell vs. Dillard*, decided by this Court, does not touch the present question.

Does that Act deprive the Circuit Court of its jurisdiction, or in any way infringe upon it? Certainly not. No contract is annulled; none impaired; no right to enforce it taken away; not even a single principle of evidence changed. No change is proposed, but the simple

removal of a cause from one Court to another, co-ordinate in power, and with precisely the same means to carry out that power. The Legislature have complete power over the remedy, in all cases of contract. The law under consideration affects the remedy; touches not the right. Whether the law is unconstitutional or not, is to be decided on a scrutiny of that instrument, and not by adjudicated cases. Cited, *Pamphlet Acts of Ark.*, 1840, *p.* 4; *Constitution, Art.* 6, *sections* 3, 4, 5, "Judicial Department,"

Second. A new trial ought to have been granted. The right of trial by jury would be the mere emptiness of sound, unless a power existed somewhere to grant new trials in civil causes. An erroneous judgment, in point of law, may be reversed, and set aside in many ways; but a general verdict can only be set right by a new trial, and this a party litigant is entitled, to, where there is a reasonable doubt that justice has been done. The doctrine of granting new trials in civil causes, has undergone a great change, commensurate with the improvement in jurisprudence. Anciently, a new trial depended upon mere discretion; and if refused, the party was without redress, nor could it be assigned as error. But now it depends upon a sound legal discretion, and may be reviewed, so as to attain the ends of justice. Where the question is involved in great doubt and obscurity, is of great value, and binds the right for ever, the Court will grant a new trial, where in an ordinary case they would refuse it. Excessiveness of damages is a good ground for a new trial, even in actions for torts, in which Courts are averse to setting aside a verdict for that cause.

The record in this case shows that the damages are excessive; and if there is one solitary reason why it should not have been granted, it will be difficult to comprehend it. It is too plain a question to be argued. 2 *T. R.*, 4; 3 *Taunt.*, 91; 2 *Wils.*, 244; 1 *Strange*, 691; 9 *J. R.*, 45; 12 *J. R.*, 234; 10 *J. R.*, 443; 5 *Cowen*, 351; 8 *Cowen*, 214; 7 *Cowen*, 613; 2 *Wend.*, 352; 5 *Cowen*, 106, show that new trials will be granted where the damages are excessive.

FOWLER, *Contra:*

The errors assigned are, that the Court improperly overruled Wilson's motion to take the case home, and his motion to set aside

the finding of the jury. And upon what but motions could error be predicated, as this case was defended by nothing but motions, and may emphatically be called *the case of motions!*

A statute relied upon by the plaintiff in error, approved on the 30th day of November, 1840, entitled "An act to enlarge and extend the provisions of the *fourth section* of a law in the *Revised Statutes,*" &c., under the head of " Practice at Law," is believed to be in violation of the Constitution of the State, and in ·contravention of an opinion heretofore given by this Court, in the case of *Dillard vs. Noel.* 2 *Ark.* 449. If so, Wilson can certainly derive no benefit from it in this case. *The 4th section,* which the latter act is designed to modify or repeal, provides that suits shall be instituted, "when the defendant is a resident of this State, either in the county in which the defendant resides, or in the county in which the plaintiff resides, and the defendant may be found;" and that no " resident of this State, who has not absconded from justice, shall be arrested on a capias in any. county, other than that of which he is a resident." See *New Code, p.* 619.

This Court, in the case of *Dillard vs. Noel,* declared the substance of said 4th section, as above referred to, to be in conflict with the Constitution; and declared that in matters of *contract,* it was the *amount* in controversy which must fix the jurisdiction, and that wholly regardless of " the *residence* of the parties, or *either of them;*" and that where process could be served on a defendant, so as to give jurisdiction of his person, the Court could not be legislated out of such constitutional jurisdiction, and restricted down by *residence.* If, then, the Legislature had no power to say that John Wilson *should not be sued* for a thousand dollars, in the Circuit Court of Pulaski county, from whence does it derive its power to declare that when suit is brought against him, he shall, on application, have the case transferred *to Pike, for* trial, *merely* because he resides there, without showing any cause whatever? Can the Legislature *indirectly* do that, and do it *constitutionally,* which they are expressly prohibited from *directly* doing? To remove a cause thus, and without any showing whatever, is it not as palpable a-divestment of its jurisdiction, as if the Court were, in the first instance, prohibited from taking cognizance at all? No reasonable distinction, it is believed, can be drawn between the two cases.

*Further,* in this case, the jurisdiction had attached, by legal service of process on Wilson; and Fowler had obtained legal rights under it, in conformity with the Constitution, before the act of 1840 had passed. Could they be wrested from him by *ex post facto* legislation?

Suppose for a moment that this last act is constitutional. Did Wilson comply with its spirit and meaning, or with its letter? The first section provides, that the application to remove must be made " on or before the first day of the said Circuit Court to which the summons may be made returnable." Would not a fair construction of that clause require a party to make his application by the first day of the term, or, at any rate, before or at the calling of the cause? Wilson neglected to make his application; and when the cause was called, on the *tenth* day of the term, an interlocutory judgment was entered against him. By his own laches, then, he forfeited the right, if any ever existed, of making the application to remove; and on this ground alone, it was properly overruled. The setting aside the judgment by default was, impliedly at least, upon condition that he would plead to the merits, although, in his affidavit, he made no showing that he had any defence; and, after a default regularly entered, he came too late with his motion and affidavit, to take the case *home,* in order to discharge himself from his just liabilities.

The fourth section of the act of 1840, requires that "the party applying for a removal" shall " give *notice* to the plaintiff, or his attorney, of record, at least *five days* previous to said application, which notice shall be *served* as in other cases," &c. This Wilson utterly failed to do. His paper, purporting to be a notice, and marked filed on the 13th of March, was never *served* on Fowler, as other notices; and the statute expressly requires that such notice should be *served.* A filing among the papers is not sufficient; it must be *served, as other notices.* How are other notices to be served? In the *New Code, page* 622, *sec.* 21, it is expressly provided, that " whenever, in the commencement or progress of any suit, it shall be necessary to serve any notice on either party to such suit, such notice may be served either, first, by an officer," &c.; " second, by any person who would be a competent witness," &c. And in section 22, " every such notice may be served in like manner as a writ of summons," &c. In section 12,

Wilson *against* Fowler.

page 621, it is directed that a *summons* may be served by *reading*, by *delivering*, or *leaving a copy*, &c. Were any of these indispensable requirements complied with by Wilson? Who would think of *serving a summons*, or *a notice to take depositions*, simply by filing it among the papers of the case? Every one, at first blush, as well as upon mature reflection, would pronounce it idle and absurd. Yet such an act would stand precisely upon the same ground as the *notice* in this case. It would be a *nullity*, as the paper filed as a notice is here not even a part of the record. It is a notice, and one not of course, required to be given during the progress of the cause; and the law authorizing it must be strictly complied with; otherwise, it cannot be regarded as any part of the proceedings, is improperly on the record, and the motion predicated thereon was rightfully overruled. The pretended notice is, that application would be made on "Friday next," without fixing any date; and this Court cannot know judicially on what day of the month "Friday next" would come; nor is there any thing in the record to aid that judicial knowledge. The notice is therefore defective on its face. Is there any thing appearing in the record, by which the plaintiff below waived the defects of the notice, or want of service? It does not even appear that the plaintiff was present when the motion to remove was made.

The motion is not shown, by the record, to have been predicated upon an affidavit, as positively required by the act of 1840. On the 19th of March, it is true, an entry was made that said Wilson then filed an affidavit; but the entry does not show what the substance of the affidavit was, nor does any appear among the papers, as filed on that day, or any other day. There is also a paper copied in the proceedings, which appears to be an affidavit made by John Wilson, before L. R. Lincoln, Clerk, on the 13th of March, 1841, but which is not *filed* in the case, and, as far as the paper speaks for itself, was not sworn to before the said Circuit Court, but before the Clerk, out of Court; consequently, the oath was not administered by any officer competent to administer it. It is, consequently, invalid on its face, and in no manner connected with the case, and, with the *notice*, ought to be excluded, as improperly incorporated into the transcript. Therefore, the application to remove the cause was correctly refused, both

Wilson *against* Fowler.

because the pretended law of 1840 was not complied with, and because that enactment is in derogation of the State Constitution, and void.

The paper purporting to be a bill of exceptions in this case, forms no part of the record. It does not purport to have been taken, or that the evidence was taken down, or that any note thereof was made, at and during the inquiry of damages; but was filed on a *subsequent day* of the term, is ex parte, and amounts to nothing but a memorandum of the Judge of the Circuit Court. If Wilson appeared before the jury, with his *witness*, in mitigation of damages, why was the evidence not reduced to writing then? The reason why bills of exceptions are required to be filed, or the evidence reduced to writing, *during trial*, is, that recollection of its details may afterwards fail to embody it correctly; at least, this is one principal reason. They can only be filed, or reduced to writing, subsequently, by *consent*, and none appears in this case. See 1 *Ark. Rep.*, 557, *Gray et al. vs. Nations*; 2 *Ark. Rep.*, 14, *Lenox vs. Pike*, and authorities referred to in the latter case. See also 5 *Conn. Rep.*, 717; 9 *Wheat. Rep.*, 651; 1 *Peters Dig.*, 333; 4 *Peters*, 102; 11 *Peters*, 185.

But admit the bill of exceptions. The evidence therein contained fully sustains the finding of the jury, who are the sole judges of the facts established by the evidence, where there is any evidence whatever to support their finding. Before it can be set aside, it must manifestly appear to be based upon no evidence whatever. Where the evidence leaves the matter in doubt, the finding should not be disturbed; because it is settled by the tribunal, to which it is peculiarly granted to weigh *the evidence* and *find the facts*. In the present case, where hangs the preponderance of evidence? It most unquestionably sustains the finding of the jury to the fullest extent. And even were it left doubtful, neither the Court below nor this Court could legitimately touch the assessment of damages.

As to bill of exceptions, see also 10 *J. R.*, 312, *Lanuse vs. Barker;* and particularly 5 *Conn. Rep.*, 721, *Walton vs. The United States.*

LACY, J., delivered the opinion of the Court:

We will not discuss the subject in regard to the application for a change of a venue, because that point does not properly come before us upon this record.

The question whether the Legislature has power to change the venue in civil and in criminal cases, is a point of great magnitude and much delicacy, upon which we neither intimate nor give any opinion.

The defendant, by failing to except to the opinion of the Court, overruling his motion for a change of venue, unquestionably waived his objection, and he cannot now be permitted to insist upon it here. This inference is deducible from the facts stated in the record. Upon the writ of inquiry, he produced a witness to mitigate the damages. By this act, he then submitted himself to the verdict of the jury; and, consequently, he cannot now be allowed to put in issue the correctness of the decision of the Court, refusing him a change of venue. A change of venue is a personal privilege, and the party has certainly a right to waive it. Again, the defendant below, upon the filing of his motion for a new trial, and taking his bill of exceptions, showed an entire willingness to have his cause tried in the Circuit Court, where it was commenced; and his motion for a new trial, and his bill of exceptions, expressly contradict the supposition that he desired a change of venue.

Having then voluntarily waived a personal right, he cannot now allege that he was prejudiced by adjudication by the local Court, where he had consented that the cause should be tried. To adopt a different rule from the one here laid down, would be to introduce into the science of special pleading the utmost confusion and uncertainty, which is equally forbidden by the dictates of sound policy, and by all the well settled principles of practice in Courts of justice.

There are certain regular progressive steps, which the pleader is bound to adopt and follow, in all judicial proceedings. It is a general rule, to which there are few exceptions, that he who abandons one point or position, and selects another, must rest his cause upon it; and if that is adjudged against him, he will not be allowed to return to

Wilson *against* Fowler.

the first point, which he has voluntarily relinquished. The law supposes each party to understand his own cause, and it therefore holds him bound by his election. This principle lies at the very foundation of all just reasoning, as well as all judicial investigation, and so it has been repeatedly determined by this Court.

Had the defendant appeared and pleaded to the action, and judgment had gone against him, he certainly would not have been permitted to come in and object to the local jurisdiction of the Court that tried the cause. His effort to mitigate the damages, his motion for a new trial, and his bill of exceptions, are all equivalent to an appearance and plea. By making a compound issue of fact and of law, and referring its decision to the judgment of the Court, he thereby placed himself exclusively upon that ground; and the law holds him bound by his own choice.

The only remaining point to be determined, is,—are the damages excessive, or is the verdict contrary to evidence?

This suit was brought by the plaintiff below, to recover certain fees, alleged to be due him as an attorney at law. The proof clearly supports the verdict. There were but three witnesses sworn upon the trial. Two of them deposed, that the fee charged, which was one thousand dollars, (and which corresponded with the verdict), was not unreasonable. One other witness, called on behalf of the defendant, does not state positively that the charge made was unreasonable, but he strongly intimates such an opinion. It was the province of the jury to compare and weigh the testimony. In the present case, they appear to have discharged their duty, and found according to the preponderance of the proof. The judgment of the Circuit Court must therefore be affirmed, with costs.